## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

KENNETH L. WALLER, JR.
ADC #103829                                                    PLAINTIFF

V.                          NO. 1:11CV00095 JLH/JTR

BILLY COWELL,
Health Services Administrator,
Corizon Medical Services, et al.,                             DEFENDANTS


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.      An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, Kenneth L. Waller, Jr., is a prisoner in the Grimes Unit of the Arkansas Department of Correction ("ADC"). In this *pro se* § 1983 action, he alleges that his constitutional rights were violated by Corizon Medical Services, Inc.

("Corizon")[1] and nine of its employees.[2] Specifically, Plaintiff alleges that: (1) Defendants Nance, Hutchinson, Bridgeman, Armstrong, Waldrupe, and Gilbert failed to provide him adequate medical care for acid reflux, peptic ulcers, and gallstones; (2) Defendants Cowell, Bagwell, and Horn failed to take corrective action after reviewing his grievances complaining about the medical care he was receiving; and (3) Defendant Corizon had an unconstitutional practice of improperly training its medical staff and delaying the referral of prisoners to medical specialists. *Docs. #2 & #7.* Finally, Plaintiff alleges a pendent state law claim against Defendants for medical malpractice. *Id.*

On October 19, 2012, Defendants filed a Motion for Summary Judgment, along with supporting motion papers.[3] *Docs. #108, #109, #110, #145 & #149.* Plaintiff has filed numerous Responses. *Docs. #129, #130, #131, #132 & #159.* Thus, the issues

---

[1]Corizon, which was formerly known as Correctional Medical Services, is a private corporation that provides health care services to ADC prisoners.

[2]The Court has previously dismissed various other claims and Defendants. *Docs. #13, #17, #165 & #172.*

[3]Summary judgment is only appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

are joined and ready for disposition.

## II. Facts

Before addressing the merits of Defendants' Motion for Summary Judgment, the Court will set forth the undisputed facts relevant to Plaintiff's remaining § 1983 claims.

1.     On October 13, 2010, Plaintiff arrived at the ADC and reported a history of acid reflux. Medical providers at the Grimes Unit began treating his condition with Zantac, a bland diet, and a GI cocktail. *Doc. #109, Ex. C.* In his deposition, Plaintiff admitted that the treatment he received was effective. *Id., Ex. A at 22.*

2.     On March 25, 2011, Plaintiff reported to Defendant RN Bridgeman ("Bridgeman") that his reflux was getting worse at night and that he had cramps. At the direction of Defendant Dr. Nance ("Nance"), Bridgeman gave Plaintiff a GI cocktail, increased his Zantac, and added Tums to his medications. *Id.*, *Ex. C at 5-10*.

3.     On March 30, 2011, Nance examined Plaintiff and explained that it would take approximately six weeks for the medications to work. *Id.*

4.     On April 10 and 23, 2011, Defendant RN Gilbert ("Gilbert") examined Plaintiff, who complained that he had stomach pain at night, especially when he chose not to eat dinner. Gilbert gave Plaintiff simethicone for gas and took a urine specimen.

After reviewing the urinalysis, Nance instructed Plaintiff to drink more water, and arranged for him to be examined by a nurse practitioner. *Id., Ex. C at 11-14.*

5.  On April 27, 2011, Defendant NP Hutchinson ("Hutchinson") examined Plaintiff for complaints of pain in the upper right quadrant of his abdomen. Hutchinson ordered lab tests, which Plaintiff refused. She also ordered abdominal x-rays, which were normal. *Id., Ex. C. at 15-17.*

6.  In his deposition, Plaintiff *admitted* that the treatment he received in March and April was effective, and that he felt better in May and June of 2011. *Id., Ex. A at 22.*

7.  On July 5, 2011, Plaintiff stopped Defendant LPN Waldrupe ("Waldrupe") in front of his cell, during pill call, and reported that Zantac was not alleviating his stomach pain. At that time, Plaintiff was in administrative segregation on "staff alert status," and there were no security officers available to escort him to the infirmary. Waldrupe told Plaintiff he would report his symptoms to Nance. He did so, and Nance ordered that Plaintiff continue taking Zantac and start taking Protonix. Waldrupe gave those medications to Plaintiff and instructed him to submit a sick call request if he did not feel better. *Id., Ex. C at 18-19; Ex. E.*

8.  On July 6, 2011, Hutchinson ordered an H-pylori test to check for ulcers. The results were negative. She instructed Plaintiff to return to the chronic care unit in

three months. *Id., Ex. C at 19*.

9.      On July 16, 2011, Plaintiff stopped Defendant LPN Armstrong ("Armstrong") in front of his cell in administrative segregation, during pill call, and complained about his stomach problems. Armstrong instructed Plaintiff to submit a sick call request if his symptoms continued. *Id., Ex. E; Doc. #89, Ex. A-8.*

10.     In his deposition, Plaintiff testified that, sometime in August of 2011, he "took himself off" Zantac because he thought it was not helping his symptoms. *Doc. #109, Ex. A at 20-21.*

11.     On August 10, 2011, Plaintiff reported to Hutchinson that he had right upper quadrant pain and vomiting. Hutchinson examined Plaintiff, continued his medications, and submitted a request for an "abdominal ultrasound." Nance modified the request to make it clear that it was for an ultrasound of "the right upper quadrant," which was the specific area of Plaintiff's pain. He forwarded the consultation request to Corizon for approval. *Id., Ex. C at 24-25*.

12.     On August 11, 2011, Plaintiff returned to the infirmary because he noticed blood in his stool. A nurse, who is not a Defendant in this action, examined Plaintiff and found no abnormalities. She instructed Plaintiff to return to sick call if his symptoms continued. *Id., Ex. C at 26.*

13.     On August 20, 2011, Plaintiff asked a nurse, who is not a Defendant in

this action, if he could be checked for colon cancer because he occasionally had blood in his stool. He also told the nurse that he had stopped taking the prescribed Protonix. The nurse noted that Plaintiff's abdomen was soft and not tender. She instructed Plaintiff to let health care providers know if he had any black tarry stools. Plaintiff declined to take any reflux medications or stool softeners. *Id., Ex. C at 27.*

14.    On September 19, 2011, Plaintiff received the ultrasound previously requested by Nance. A radiologist at the hospital determined that Plaintiff had two small floating gallstones, without any obstructions in his bile or common ducts. *Id., Ex. C at 29-30.*

15.    After reading the ultrasound report, Nance sent a surgical consultation request to Corizon. *Id., Ex. C. at 31-32.*

16.    On October 4, 2011, a surgeon in private practice examined Plaintiff. He described persistent stomach pain, especially after eating, and a family history of colon cancer. The surgeon recommended that Plaintiff receive an upper and lower endoscopy, and, if those tests were negative, laparoscopic removal of his gallbladder "at a later date." *Id., Ex. C. at 33-35.*

17.    On October 5, 2011, Nance submitted a request to Corizon for Plaintiff to have upper and lower endoscopies. *Id., Ex. C at 36-37.*

18.    On October 7, 2011, a surgeon performed the upper and lower

endoscopies at a hospital. The upper endoscopy revealed that Plaintiff had significant peptic ulcer disease, without any active bleeding. The lower endoscopy showed occasional arteriovenous malformations that may have caused intermittent rectal bleeding. The surgeon recommended a follow up examination, at an unspecified time. Importantly, the surgeon did *not* make any recommendations regarding the removal of Plaintiff's gallbladder. He also released Plaintiff from the hospital on the same medications that he was receiving in prison. *Id., Ex. C at 38-40, 47.*

19.     Later that day, Nance reviewed the surgeon's findings, doubled Plaintiff's Protonix, and continued his other gastrointestinal medications. *Id., Ex. C at 41-42.*

20.     On October 15, 2011, Plaintiff refused to be examined or treated during sick call because he wanted to be seen by an outside specialist. *Doc. #132 at 45.*

21.     On October 24, 2011, Plaintiff returned to the infirmary. He stated that Zantac made him nauseous and that he had upper right quadrant pain, occasional bloody stools, and weight loss. A nurse, who is not a Defendant in this action, noted that Plaintiff had a flat, nontender abdomen, with normal bowel sounds. The nurse discontinued Zantac and started Plaintiff on Carafate to treat his ulcers. She instructed him to return to the infirmary if his symptoms did not improve. *Id., Ex. C at 43.*

22.     On November 1, 2011, Plaintiff filed this lawsuit. *Doc. #1.*

23.     On November 12, 2011, Plaintiff returned to the infirmary with chest and

stomach pain, blood in his stool, and the inability to hold down food for the last three days. A nurse, who is not a Defendant in this action, determined that Plaintiff was dehydrated, with marked weight loss, and a rigid abdomen. The nurse contacted Nance, who ordered IV fluids and a blood draw. When the nurse was unable to carry out those orders, Nance ordered Plaintiff to be transported immediately to a hospital. *Doc. #109, Ex. C. at 44-45.*

24.     On November 12, 2011, Plaintiff was admitted to a hospital where he was monitored for two days. During that time, he was able to eat and his constipation resolved. After examining Plaintiff and reviewing a CT scan of his abdomen, the surgeon determined that Plaintiff's gallbladder should be surgically removed. *Doc. #131 at 61-63, 67-68.*

25.     On November 14, 2011, Plaintiff's gallbladder was removed laparoscopically, without complications, and he returned to the Grimes Unit. *Id. at 64-65.*

## III. Discussion

**A.     Exhaustion of Administrative Remedies**

**1.     The PLRA's Exhaustion Requirement**

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to: (1) fully and *properly* exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000) (emphasis added). Importantly, the Supreme Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to

satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility. *Id.*

To properly grieve a medical issue, an ADC prisoner must: (1) file an informal resolution with the medical staff; (2) file a grievance with the Health Services Administrator if the attempt at informal resolution is unsatisfactory; and (3) appeal the denial of that grievance to the ADC Deputy Director for Health and Correctional Programs.[4] *Doc. #89, Ex. A.* The ADC exhaustion policy requires inmates to "specifically name each individual" involved in the grieved matter, and advises prisoners that their federal lawsuit can be dismissed if they fail to do so. *Id.* (ADC Admin. Dir. 07-03 §§ IV(C)(4), (E)(2), and (N)). Additionally, the grievance forms themselves remind prisoners that they must specify the "name of personnel involved." *Id.*

### 2.    Plaintiff Should Be Allowed to Proceed with His § 1983 Claims Arising from His Eight Fully Exhausted Grievances

Plaintiff filed eight grievances complaining about the medical care he was

---

[4]In this case: (1) Defendant LPN Horn ("Horn") reviewed Plaintiff's informal resolutions; (2) Defendants RN Cowell ("Cowell") and RN Bagwell ("Bagwell") reviewed Plaintiff's grievances; and (3) Defendant Kelly, the ADC's Deputy Director for Health and Correctional Programs, made the final decisions, on appeal, to deny Plaintiff's grievances. *Doc. #89, Ex. A; Doc. #109, Exs. B & C.*

receiving for his gastrointestinal problems between March and October of 2011.[5] *Doc. #89, Ex. A.* The record is clear that Plaintiff fully exhausted his administrative remedies in connection with each of those eight grievances.[6]

Defendants argue that, under the Supreme Court's holdings in *Jones* and *Woodford,* Plaintiff has exhausted his administrative remedies: (1) only as to *the specific Defendants he named* in those eight grievances; and (2) only with regard to the allegedly inadequate medical care they rendered *through July 28, 2011.*[7] *Doc. #89,*

---

[5]Those grievances assert the following claims: (1) Bridgeman denied him adequate medical care on March 25, 2011 was exhausted in GR11-504; (2) Gilbert denied him adequate medical care on April 10 and 23, 2011 was exhausted in GR11-504 and GR11-951; (3) Hutchinson denied him adequate medical care on April 27, July 6, and August 10, 2011 in GR11-504, GR11-951, GR11-968, and GR11-940; (4) Waldrupe denied him adequate medical care on July 5, 2011 in GR11-940 and GR11-951; (5) Armstrong denied him adequate medical care on July 16, 2011 in GR11-990 and GR11-1054; (6) Nance denied him adequate medical care from March 25 until October 21, 2011 in GR11-540, GR11-940, GR11-951, GR11-968, GR11-990, GR11-1004, GR11-1033, and GR11-1054; (7) Horn, Cowell, and Bagwell failed to take corrective action in GR 11-968, GR11-990, GR11-1004, and GR11-1033; and (8) Corizon had an unconstitutional practice of delaying specialist referrals and improperly training their employees in GR11-951 and GR11-1004. *Doc. #89, Ex. A.*

[6]The final administrative review of those grievances was completed on October 21, 2011, which was *before* Plaintiff commenced this lawsuit on November 1, 2011. In September and October of 2011, Plaintiff filed additional grievances about the medical care he was receiving for his gastrointestinal problems. *However, he unquestionably completed the exhaustion process for those grievances after he initiated this action. Doc. #131 at 21-50.* Thus, any claims arising from those grievances are not part of this action and are irrelevant to the exhaustion issues now before the Court. *See Johnson*, 340 F.3d at 627 (emphasizing that "an inmate must exhaust administrative remedies before filing suit in federal court. ... If exhaustion was not completed at the time of filing, dismissal is mandatory").

[7]Specifically, Defendants argue that Plaintiff only exhausted his claims that: (1) Nance provided inadequate medical care on March 30, 2011; (2) Cowell, Horn, and Bagwell failed

E. A-9. According to Defendants, in resolving the exhaustion issue, the Court should focus only on the grievances themselves and *not* consider any of the issues the prison officials reviewing those grievances actually reached and decided, *on the merits*, during the administrative review process.

In several recent decisions, the Eighth Circuit has moved away from looking only at the four corners of a grievance to decide if the PLRA's exhaustion requirement has been satisfied. In *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012), the Court held that the PLRA's exhaustion requirement was satisfied when prison officials reached the merits of a prisoner's otherwise *untimely* filed grievance: "[T]he PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *Id.* The Court reasoned that, in such instances, the policies underlying the PLRA's exhaustion requirement are satisfied because: (1) prison officials had a "fair and full opportunity to adjudicate" the prisoner's claim before court intervention; (2) a "complete administrative record exists"; and (3) the court has "the benefit of the agency's reviewing institutional perspective."[8] *Id.* at 947- 48.

---

to take proper corrective action from July 8 through July 23, 2011; and (3) Corizon failed to properly train its employees and had a practice of delaying referrals to specialists. *Doc. #110 at 10.*

[8]Since *Hammett*, Eighth Circuit panels have split over whether an Arkansas prisoner's failure to specifically name each defendant in his grievances, as required by the ADC's exhaustion policy, is always fatal to proper exhaustion of administrative remedies. In *Bower v. Kelley*, Case No. 12-1678, 2012 WL 6199266 (8th Cir. Dec. 13, 2012) (unpublished

The final administrative rulings on Plaintiff's eight fully exhausted grievances were issued on October 21, 2011. In those rulings, prison officials carefully reviewed and decided *all* of Plaintiff's medical care complaints raised in those grievances. In doing so, prison officials sometimes specifically mentioned some of the named nurses and doctors and sometimes referred to them only by their titles or the dates the medical care was administered. Nevertheless, it is clear from the rulings of the prison officials denying those grievances that they reached the merits of all of the claims that Plaintiff is now asserting against all of the Defendants *except for the three claims that he is asserting against Armstrong and Waldrupe that arose in August 2011*.

---

opinion) and *Parks v. Corizon, Inc.*, Case No. 12-3516, 511 Fed. Appx. 588 (8th Cir. June 27, 2013) (unpublished opinion) the Court found proper exhaustion as to all the defendants, including those *not named* in the grievances, because prison administrators reached the merits of the prisoners' claims. In contrast, in *Jones v. Hobbs,* Case No. 12-2002 (8th Cir. Jan. 22, 2013) (unpublished decision) the Court held that the prisoner had *not* properly exhausted because he failed to specifically name two of the three defendants. Similarly, in *Champion v. Akins,* No. 12-2467, 2013 WL 656797 (8th Cir. Feb. 25, 2013) (unpublished opinion), the Court found partial exhaustion where a prisoner named three defendants in his grievances, but only alleged that one defendant did anything wrong.

United States District Judge Susan Webber Wright recently held that a prisoner properly exhausted his administrative remedies only against the single defendant that he specifically named in his grievance. *Burns v. Eaton*, Case No. 2:11CV00049 SWW/BD (*Doc. #78*). That ruling is currently on appeal to the Eighth Circuit. *Burns v. Eaton*, Case No. 13-1730.

Finally, in an earlier Recommended Disposition in this case, *Doc. #165*, the Court explained how these Eighth Circuit opinions can be harmonized by focusing on whether – despite the procedural flaw associated with a prisoner's failure to name a putative defendant in his grievance – prison officials proceeded to "*reach and decide the merits of the specific claims* asserted ...." *Id. at 10* (emphasis in the original). Obviously, in order to make that determination, a court must look beyond the prisoner's grievances and examine the issues that prison officials reviewed and decided during the administrative appeal process.

Plaintiff claims that, on three occasions in August of 2011, Armstrong or Waldrupe refused to provide him with medical care when they passed his cell in administrative segregation during pill call. However, Plaintiff never mentioned those three alleged incidents involving Armstrong and Waldrupe in any of the eight fully exhausted grievances. Similarly, there is nothing in any of the prison officials' subsequent administrative rulings to suggest that they were aware of those claims, much less that they reached and decided those claims on the merits. Thus, Plaintiff has failed to exhaust his administrative remedies only in connection with his claims that, in August 2011, Armstrong or Waldrupe refused to provide him with medical care on three occasions.

The Court recommends that only Plaintiff's August 2011 claims against Armstrong and Waldrupe be dismissed, without prejudice, based on his failure to exhaust his administrative remedies on those claims. *See Jones*, 549 U.S. at 211 (emphasizing that: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

The Court further recommends that: (1) all of Plaintiff's inadequate medical care claims against Nance, Hutchinson, Bridgeman and Gilbert be deemed fully exhausted; and (2) Plaintiff's inadequate medical care claims against Armstrong and Waldrupe for their alleged conduct on July 5 and July 16, 2011, be deemed fully

exhausted.

**B.      Analysis of the Merits of Plaintiff's Surviving § 1983 Claims**

**1.      Plaintiff's Inadequate Medical Care Claims Against Nance,
Hutchinson, Bridgeman, Armstrong, Waldrupe, and Gilbert**

To succeed on his Eighth Amendment inadequate medical care claims, Plaintiff

must prove that: (1) he had objectively serious medical needs; and (2) Defendants

subjectively knew of, but deliberately disregarded, those serious needs. *See Estelle v.*

*Gamble*, 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010);

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The parties agree that Plaintiff's gastrointestinal problems were objectively

serious medical needs. Thus, the issue is whether Defendants were deliberately

indifferent when treating those serious medical needs. Deliberate indifference, which

is a higher standard than gross negligence, "requires proof of a reckless disregard of

the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words,

"there must be actual knowledge of the risk of harm, followed by deliberate inaction

amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

The undisputed medical records establish that, from March to June of 2011,

Nance, Hutchinson, Bridgeman, Armstrong, Waldrupe and Gilbert all treated

Plaintiff's acid reflux and stomach pain with Zantac, Tums, simethicone, and GI

cocktails. Importantly, in his deposition testimony, Plaintiff *conceded* that this

treatment was effective. *Doc. #109, Ex. A at 22.*

When Plaintiff's symptoms returned in July of 2011, Nance added Protonix to his other medications and checked for H-pylori, which was negative. When Plaintiff began having sharp stomach pains, vomiting, and bloody stools, in August of 2011, Nance ordered an ultrasound. *Id., Ex. A at 20-21; Ex. C at 24-25.* A radiologist in private practice performed the ultrasound on September 19, 2011. It revealed two small floating gallstones, but no duct obstruction. *Id., Ex. C at 29-30.*

Nance then sent Plaintiff for a surgical consultation which took place on October 4, 2011. *Id., Ex. C. at 31-32.* The surgeon recommended that Plaintiff receive an upper and lower endoscopy, and, if those tests were negative, laparoscopic removal of his gallbladder *"at a later date." Id., Ex. C at 31-35 (emphasis added).*[9] Consistent with the surgeon's recommendation, on October 5, 2011, Nance ordered Plaintiff to have an upper and lower endoscopy. *Id., Ex. C at 36-37.*

On October 7, 2011, a surgeon performed upper and lower endoscopies and diagnosed Plaintiff with peptic ulcer disease, without any active bleeding, and arteriovenous malformations that may cause intermittent rectal bleeding. The surgeon did *not* recommend the removal of Plaintiff's gallbladder but did recommend a

---

[9]Contrary to Plaintiff's assertion, the surgeon did *not* recommend the removal of Plaintiff's gallbladder at that time. Instead, he recommended a follow-up exam, and he *continued* the medications prescribed by Nance.

follow-up examination, at an unspecified time. *Id., Ex. C at 38-40, 47.*

When Plaintiff returned to the ADC later that day, Nance reviewed the surgeon's findings, doubled Plaintiff's Protonix, and continued his other gastrointestinal medications. *Id., Ex. C at 41-42.*

On October 24, 2011, Plaintiff returned to the infirmary complaining of stomach pain, occasional bloody stools, and weight loss. The nurse found Plaintiff's abdomen to be flat, nontender, and making normal bowel sounds. She discontinued Plaintiff's Zantac because he believed it was making him nauseous and started him on Carafate to treat his ulcers. He was instructed to return to the infirmary if his symptoms did not improve. *Id., Ex. C at 43.*

On November 12, 2011, Plaintiff returned to the infirmary with complaints of chest and stomach pain, blood in his stool, an inability to hold down food, and dehydration. A nurse contacted Nance, who ordered Plaintiff to be taken immediately to the hospital. *Id., Ex. C at 44-45.*

Plaintiff was monitored in the hospital for two days and received a CT scan of his abdomen. A surgeon determined, based on the CT scan, that Plaintiff's gallbladder should be surgically removed. *Doc. #131 at 61-63, 67-68.*

On November 14, 2011, Plaintiff's gallbladder was removed laparoscopically, without complications. *Id. at 64-65.*

The undisputed medical record and Plaintiff's own deposition testimony establish that Nance, Hutchinson, Bridgeman, Armstrong, Waldrupe and Gilbert: (1) promptly and consistently treated his gastrointestinal problems as they arose; and (2) escalated their course of care as his symptoms warranted. *See Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (finding no deliberate indifference when medical providers treated the inmate on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner"); *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994) (finding no deliberate indifference when the medical personnel provided a prisoner with "an escalating level of treatment for [his] ailments over time"). Reviewing these undisputed facts in a light most favorable to Plaintiff and drawing all permissible inferences that might support his claims, there is simply *no evidence* that Nance, Hutchinson, Bridgeman, Armstrong, Waldrupe and Gilbert manifested *any deliberate indifference* in providing medical care to Plaintiff during the relevant time period covered by the eight fully exhausted grievances.[10]

Finally, Nance's sworn statement establishes that Plaintiff received adequate medical care for his gastrointestinal issues. *Doc. #109, Ex. C.* Although he has been

---

[10]As previously explained, while Plaintiff contends that he continued to receive inadequate medical care after October 21, 2011, he clearly did *not* exhaust his administrative remedies regarding those claims *before* he initiated this action on November 1, 2011. Therefore, the claims arising from those grievances are *not* part of this action.

given the opportunity to do so, Plaintiff has not come forward with *any* evidence to refute Nance's sworn statement or otherwise demonstrate that he received inadequate medical care. *See Langford,* 614 F.3d at 460 (holding that a prisoner's disagreement with a medical provider's treatment decisions does not rise to the level of a constitutional violation); *Dulany,* 132 F.3d at 1240 (holding that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment").

In his Responses to Defendants' Motion for Summary Judgment, Plaintiff makes the conclusory argument that Defendants did not adequately treat the pain caused by his gastrointestinal problems. In doing so, however, Plaintiff ignores the medical records which establish that he received Naproxen and Ibuprofen, from March until December of 2011, to help control his pain. *Doc. #132 at 20 & 26.* He also fails to acknowledge that his pain may have been caused by his own decision to go against Defendants' medical orders by: (1) not taking his Zantac and Protonix over a period of time; (2) declining reflux medications and stool softeners on at least on occasion; and (3) refusing to be seen at sick call at least once. *See Logan*, 119 F.3d at 650 (finding no deliberate indifference where the medical treatment was "impeded by the [the prisoner's] apparent inability or refusal to follow their instructions"); *Long*

*v. Nix*, 86 F.3d 761, 765-66 (8th Cir. 1996) (finding no deliberate indifference where the prisoner failed to cooperate with the prescribed course of medical care).

Plaintiff argues that Nance unnecessarily delayed referring him to a specialist. However, Plaintiff has not provided *any evidence* to support that allegation or demonstrated that he was harmed by any such alleged delay. *See Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (to avoid summary judgment, an inmate must show that a defendant ignored a critical or escalating medical situation, or that the delay adversely affected the inmate's prognosis). To the contrary, the medical records and Nance's unrefuted sworn statement establishes that he *promptly* referred Plaintiff to a surgeon when his conditions worsened, and he and the other Defendants consistently followed the surgeon's recommendations regarding the treatment Plaintiff should receive.

Plaintiff also alleges that, on July 5 and 16, 2011, Waldrupe and Armstrong violated his constitutional rights by refusing to provide him with medical care when they passed his cell during pill call. However, it is *undisputed* that, after Plaintiff complained to Waldrupe about stomach pain during pill call on July 5, Waldrupe

-21-

reported the complaint to Nance and carried out Nance's orders to start Plaintiff on Protonix. Similarly, while Plaintiff mentioned to Armstrong, as she passed his cell during pill call on July 16, that he was experiencing stomach pain, Armstrong told him to submit a sick call request if his symptoms continued. *Doc. #109, Exs. C & E.* Thus, there is simply *no evidence* that they ignored his complaints of stomach pain or otherwise acted with deliberate indifference.

Finally, Armstrong and Waldrupe explain, in their sworn declarations, that they were not supposed to treat or examine prisoners during pill call. *Id.*, *Exs. D, E, & F; Doc. #131 at 15-19.* This was especially true for Plaintiff, who was in administrative segregation on "staff alert" status. *Id.* Consistent with ADC policy, Armstrong and Waldrupe instructed Plaintiff to submit sick call requests so that security personnel could escort him to the infirmary. *Id.* Plaintiff did not do so. *Doc. #13 at 12-13.*

Accordingly, Nance, Hutchinson, Bridgeman, Armstrong, Waldrupe, and Gilbert are entitled to summary judgment, and Plaintiff's inadequate medical care claims against them should be dismissed, with prejudice.

## 2.   Plaintiff's Corrective Inaction Claim against Horn, Cowell, and Bagwell

In a § 1983 action, supervisors may not be held vicariously liable for inadequate medical care provided to a prisoner unless it can be established that they: (1) were actually aware that prison medical personnel were providing inadequate medical care

to the prisoner; and (2) failed, with deliberate indifference, to take proper corrective action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Langford,* 614 F.3d at 460; *Parrish v. Ball,* 594 F.3d 993, 1001-02 (8th Cir. 2010).

The grievance forms establish that Horn, Cowell, and Bagwell investigated Plaintiff's complaints and they confirmed that Plaintiff was being treated by prison medical staff. *Doc. #89, Ex. A.* The Court has previously concluded that Nance, Hutchinson, Bridgeman, Armstrong, Waldrupe and Gilbert were *not* deliberately indifferent in their treatment of Plaintiff's gastrointestinal problems. *A fortiori*, there is no evidence to support the proposition that Horn, Cowell and Bagwell "failed, with deliberate indifference," to take any corrective action.

Accordingly, Horn, Bagwell, and Cowell are entitled to summary judgment, and Plaintiff's corrective inaction claims against them should be dismissed, with prejudice.

### 3.    Plaintiff's Unconstitutional Practice Claims Against Corizon

Under § 1983, there is no respondeat superior liability. Thus, a corporation, acting under color of state law, can only be held liable for its unconstitutional policies or practices. In other words, Corizon can be held liable only if "there was a policy, custom, or official action that inflicted an actionable injury" on Plaintiff. *See Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006); *Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 975-976 (8th Cir. 1993).

Plaintiff makes the conclusory assertion that Corizon had an unconstitutional practice of delaying referrals to specialists and improperly training its employees. However, he has come forward with *no evidence* to support that entirely speculative claim.

The Court has previously concluded that there was no improper delay in referring Plaintiff to a specialist. Additionally, there is no evidence that any of the Defendants, all of whom are licensed medical providers, were not properly trained. Thus, Corizon is entitled to summary judgment, and Plaintiff's unconstitutional practice claims against it should be dismissed, with prejudice.

**C.     Plaintiff's Pendent Medical Malpractice Claim**

Finally, Plaintiff alleges that, under Arkansas law, Defendants committed medical malpractice. In their summary judgment papers, Defendants argue that the Court should either: (1) decline to exercise supplemental jurisdiction over that claim, pursuant to 28 U.S.C. § 1367(c)(3); or (2) dismiss the claim on the merits. Given the manifest legal deficiencies in Plaintiff's pendent malpractice claim, the Court recommends that, as a matter of law, it be dismissed on the merits.

The Arkansas Medical Malpractice Act provides that "when the asserted negligence does not lie within the jury's comprehension as a matter of common

knowledge," a plaintiff must produce expert testimony establishing the appropriate standard of care, a breach of that standard of care, and proximate causation.[11] Ark. Code Ann. § 16-114-206(a).

In the twenty-one months this action has been pending, Plaintiff has failed to produce any expert testimony to support his medical malpractice claim. In this case, a jury of laymen clearly would not be able to determine, in the absence of expert testimony, whether any of the Defendants breached the applicable standard of care and whether any such breach proximately caused an injury to Plaintiff.

Accordingly, Defendants are also entitled to summary judgment on Plaintiff's pendent medical malpractice claim, which should be dismissed, with prejudice. *See Nat'l Bank of Commerce v. Quirk*, 918 S.W.2d 138, 149-150 (Ark. 1996) (affirming summary judgment where a plaintiff failed to produce expert testimony required by Ark. Code. Ann. § 16-114-206(a))*; Neal v. Farris*, 278 S.W.3d 129, 130 (Ark. App. 2008) (same).

## IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

---

[11]The "common knowledge exception" applies only when the asserted negligence lies "within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it." *Haase v. Starnes*, 915 S.W.2d 675, 678 (Ark. 1996); *see also Mitchell v. Lincoln,* 237 S.W.3d 455, 460 (Ark. 2006) (explaining that, in the "vast majority" of cases, Arkansas courts have held that the common knowledge exception does not apply).

1.      Defendants' Motion for Summary Judgment (Doc. #108) be GRANTED.

2.      Plaintiff's § 1983 claim that Defendants Armstrong and Waldrupe denied him adequate medical care in August of 2011 be DISMISSED, WITHOUT PREJUDICE, based on Plaintiff's failure to exhaust his administrative remedies.

3.      Plaintiff's remaining § 1983 claims against Defendants Nance, Hutchinson, Bridgeman, Armstrong, Waldrupe, Gilbert, Horn, Cowell, Bagwell and Corizon be DISMISSED, WITH PREJUDICE.

4.      Plaintiff's pendent medical malpractice claim be DISMISSED, WITH PREJUDICE.

5.      The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommended Disposition would not be taken in good faith.

Dated this 9th day of August, 2013.

_____
UNITED STATES MAGISTRATE JUDGE